**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2410
_____

ERAN RUBINSTEIN; SUSAN M. BOLTZ-RUBINSTEIN,
Appellants

v.

BANK OF AMERICA NA; BANK OF NEW YORK MELLON; ARCH CAPITAL
GROUP US INC; ANN M. GOLIO; J. MARK SWINTEK; NATIONAL RESIDENTIAL
ASSETS CORP; DOES 1 THROUGH 100 INCLUSIVE; TERRI Y. STALLINGS; KIM
B. MARTINEZ; CHAD M. ANDERSON.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2:22-cv-04774)
District Judge: Honorable Eduardo C. Robreno
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on September 16, 2024

Before: RESTREPO, PHIPPS, and MCKEE, *Circuit Judges*.

(Filed: April 30, 2025)
_____

OPINION*
_____

_____

   * This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does
not constitute binding precedent.

RESTREPO, *Circuit Judge*

The instant case is but one chapter of a protracted legal battle between Eran Rubinstein, Susan M. Boltz-Rubinstein (collectively, "Appellants"), and the entities and individuals whom Appellants contend collaborated to wrongly foreclose on Appellants' home. Since initiating Chapter 13 bankruptcy proceedings in 2010, Appellants have filed numerous adversary proceedings and appeals, culminating in this case filed on December 1, 2022, in the District Court for the Eastern District of Pennsylvania. In their complaint, Appellants bring claims against Appellees under the Racketeer Influenced and Corrupt Organizations Act ("RICO") for allegedly collaborating in a "false lien scheme." JA45.

The District Court dismissed Appellants' complaint on July 6, 2023, finding Appellants' RICO claims to be barred by res judicata, the applicable statute of limitations, and Boltz-Rubinstein's bankruptcy. Because Appellants' claims are time-barred, we will affirm.

I.    **Background**[1]

On November 15, 2005, Bank of America issued two mortgage loans to Susan Boltz-Rubinstein to finance the purchase of Appellants' home, a residence located in Furlong, Pennsylvania. Bank of America sold the first of these loans, a $593,334 first-lien loan (the "First Mortgage Loan"), to Bank of New York Mellon on January 7, 2006. Pursuant to the terms of this sale, Bank of America continued to service this loan on behalf of Bank of New York Mellon. Bank of America did not assign the second-lien loan (the "Second

---

[1] Since we write primarily for parties already familiar with this case, we include only those facts necessary to reach our conclusion.

2

Mortgage Loan") to Bank of New York Mellon in this transaction, and in 2008 assigned it to United Guaranty Residential Insurance Company of North Carolina.

In 2010, Bank of America mailed Appellants a pre-foreclosure letter, Boltz-Rubinstein filed for Chapter 13 bankruptcy, and Bank of America assigned the First Mortgage Loan to National Residential Assets Corp. In 2011, the 2010 assignment of mortgage was recorded in Bucks County, Pennsylvania and a corresponding proof of claim was filed in Boltz-Rubinstein's bankruptcy proceeding.

In the years that followed, Appellants initiated numerous adversary proceedings challenging the legitimacy of the assignments of the First Mortgage Loan and Second Mortgage Loan and alleging that Bank of America had violated the automatic stay associated with Boltz-Rubinstein's bankruptcy. The Bankruptcy Court dismissed most of Appellants' claims but allowed Appellants' claim for violation of the bankruptcy stay to proceed. When this claim, too, failed at trial, Boltz-Rubinstein appealed the Bankruptcy Court's judgment to the District Court, which affirmed. Boltz-Rubinstein appealed to this Court.

While Boltz-Rubinstein's appeal was pending, Appellants engaged in a May 13, 2021 mediation with Bank of America. A corporate official with settlement authority was required to participate in this mediation, but Appellants contend that Bank of America violated this requirement by sending Chad M. Anderson, allegedly a "contractor" who "lacked 'settlement authority.'" JA36. Appellants do not describe the outcome of this mediation, and ultimately this Court affirmed the District Court's judgment.

On December 1, 2022, Appellants initiated the instant suit against Appellees. Appellants' amended complaint, filed on February 21, 2023, brought claims pursuant to RICO, alleging that Appellees engaged in a "corrupt scheme to fraudulently, systematically and uniformly create and place a false lien on [Appellants'] property." JA51. Appellants also brought claims for quiet title and declaratory relief which were not raised on appeal.

The "scheme" alleged by Appellants began with a "corrupt" amendment to the loan mortgage servicing agreement between Bank of New York and Bank of America in 2010, followed in the same year by the assignment of Appellants' mortgage "pursuant to the corrupt amendment." JA51–52. Appellants allege that several other steps in furtherance of this scheme followed between 2011 and 2018, including the 2011 recording of the mortgage assignment and a series of letters sent to Appellants between 2016 and 2018 regarding the mortgage.

Appellants also contend that they received a collection letter associated with the mortgage on November 1, 2022, and that in 2021, a Bank of America agent paid Chad M. Anderson via wire or mail "for his services in relation to preparing for and attending the May 13, 2021 mediation in the Third Circuit Court of Appeals." JA54. Appellants allege that Bank of America's "[u]se of Chad M. Anderson" in this 2021 mediation "served to relieve actual [Bank of America] mortgage resolution associates from being tasked to perform work, including testimony, pertaining to the creation and concealment of the false lien scheme." JA45.

In March 2023, Appellees moved to dismiss, and the District Court granted Appellees' motions on July 6, 2023. The District Court found Appellants' RICO claims to be barred

by res judicata, the statute of limitations, and Boltz-Rubinstein's Chapter 13 bankruptcy. Appellants moved for reconsideration on July 16, 2023, which the District Court denied on July 28, 2023. Appellants appealed to this Court on August 4, 2023.

## II.    Discount[2]

Though the District Court identified three independent bases for the dismissal of Appellants' complaint, we need only address one to affirm: the statute of limitations for RICO claims. *See TD Bank N.A. v. Hill*, 928 F.3d 259, 270 (3d Cir. 2019) ("We may affirm on any basis supported by the record[.]").

"The limitations period for a federal RICO claim is four years[,]" a period which "begins to run when the plaintiff knows or should know of both its injury and the source of its injury." *LabMD Inc. v. Boback*, 47 F.4th 164, 179 (3d Cir. 2022). "The cause of action accrues even though the full extent of the injury is not then known or predictable." *Kach v. Hose*, 589 F.3d 626, 634–35 (3d Cir. 2009) (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007)).

"The limitations period for a RICO claim may be equitably tolled 'where a pattern remains obscure in the face of a plaintiff's diligence in seeking to identify it[.]'" *LabMD*

---

[2]  The District Court had federal question jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291.

"We exercise plenary review of a district court's order granting a motion to dismiss." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245 (3d Cir. 2014) (citing *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011)). "We review the denial of a motion for reconsideration for abuse of discretion[,]" *United States v. Kalb*, 891 F.3d 455, 459 (3d Cir. 2018), except that when reconsideration "was denied for legal reasons[,]" "we review this decision de novo," *United States ex rel. Ascolese v. Shoemaker Constr. Co.*, 55 F.4th 188, 193 (3d Cir. 2022).

*Inc.*, 47 F.4th at 181. Equitable tolling requires "active misleading by the defendant," which involves "tak[ing] steps beyond the challenged conduct itself to conceal that conduct from the plaintiff." *Id.* To establish fraudulent concealment meriting the application of equitable tolling, there are "three necessary elements" that "[t]he plaintiff has the burden of proving[:]" "(1) 'active misleading' by the defendant, (2) which prevents the plaintiff from recognizing the validity of her claim within the limitations period, (3) where the plaintiff's ignorance is not attributable to her lack of 'reasonable due diligence in attempting to uncover the relevant facts.'" *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 256 (3d Cir. 2001) (quoting *Forbes v. Eagleson*, 228 F.3d 471, 486 (3d Cir. 2000)).

Here, the District Court concluded that "[t]he alleged RICO predicate acts primarily involve the drafting and recording of the mortgage assignments which occurred in 2008, 2010, and 2011" as well as "various mailings about [Appellants'] loans dating from 2011 to early 2018." JA6. Because "[t]his case was filed on December 1, 2022," the District Court found that the alleged acts between 2008 and 2018 occurred outside the statute of limitations. *Id.* The District Court then found that the post-2018 acts alleged by Appellants were nothing more than "new acts . . . used 'as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the statutory period.'" *Id.* (quoting *Annuli v. Panikkar*, 200 F.3d 189, 197 (3d Cir. 1999)). Finally, the District Court found equitable tolling did not apply because Appellants were not actively misled and "instead had actual notice of the parts of the alleged scheme via public filings and documents between 2011 and early 2018." *Id.*

6

Appellants argue that the District Court's finding was clearly erroneous because Appellants alleged predicate acts taking place on May 13, 2021 and November 1, 2022. Appellants contend that Chad M. Anderson's appearance at the 2021 mediation and the associated payment made to him was a new predicate act resulting in a new injury: "[t]he loss of a chance to obtain a settlement." Appellants' Br. at 12. Appellants urge this Court to apply the "separate accrual" rule, in which "commission of a separable, new predicate act within a 4–year limitations period permits a plaintiff to recover for the additional damages caused by that act." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997).

Appellants' arguments are unavailing. As an initial matter, the purported predicate act that took place on November 1, 2022—the mailing of a collections letter—did not result in a new injury to Appellants, nor do Appellants argue in their submissions to this Court that it did. Likewise, Chad M. Anderson's mediation appearance did not result in a new injury to Appellants that could support their RICO claims. Appellants' complaint is devoid of any allegations that Anderson's presence denied Appellants "a chance to obtain a settlement"—a conclusion that does not follow from Appellants' mere allegation that Anderson lacked settlement authority. Appellants' Br. at 12.

Even assuming *arguendo* that Anderson's attendance at the 2021 mediation impaired Appellants' ability to settle their case, this loss would not give rise to a valid RICO claim. "[S]ection 1964(c)'s limitation of RICO standing to persons 'injured in [their] business or property' has a 'restrictive significance,'" *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (quoting *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339 (1979)), demanding "proof of a concrete financial loss and not mere injury to a valuable intangible property interest[,]"

7

*id.* at 483.  Though Appellants contend that Anderson undercut their ability to settle, they fail to allege any associated concrete financial loss.  This same failing applies to Appellants' allegation that a payment was transmitted to Anderson in 2021: similarly, Appellants do not allege that this payment caused them a concrete financial loss.

Accordingly, none of the post-2018 alleged predicate acts advanced by Appellants caused new damages cognizable under RICO.  Because the only predicate acts giving rise to damages occurred prior to December 1, 2018—four years prior to the filing of Appellants' December 1, 2022 complaint—Appellants' RICO claims are time-barred unless saved by the application of equitable tolling.  But, as the District Court correctly found and Appellants have not challenged on appeal, Appellants failed to establish that they were "actively misled" as required for equitable tolling.  *Mathews*, 260 F.3d at 256. Appellants' RICO claims are thus time-barred.

III.    **Conclusion**

For the reasons set forth above, we will affirm the District Court's July 6, 2023 order.